1 | KIRKLAND & ELLIS
Yan-Xin Li (SBN 332329)
2 | yanxin.li@kirkland.com
555 California Street, 27th Floor
3 | San Francisco, CA 94104
T: (415) 439-1400
4 |
5 | Dale M. Cendali (SBN 1969070)
dale.cendali@kirkland.com
6 | Mary Mazzello (*pro hac vice* forthcoming)
mary.mazzello@kirkland.com
7 | 601 Lexington Avenue
New York, NY 10022
8 | T: (212) 446-4800

9 | Miranda D. Means (*pro hac vice* forthcoming)
miranda.means@kirkland.com
10 | 200 Clarendon Street
Boston, MA 02116
11 | T: (617) 385-7500

*Attorneys for Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN THE MATTER OF A DOCUMENT SUBPOENA TO 1000 VAN NESS LP SERVED IN:<br><br>APPLE INC.,<br><br>      Plaintiff,<br><br>      v.<br><br>SAND MEDIA CORP INC, APPLE CINEMAS DANVILLE INC., APPLE CINEMAS VAN NESS INC, JAAS MEDIA INC., APPLE CINEMAS GREECE RIDGE INC, APPLE CINEMAS HARTFORD, INC, APPLE CINEMAS PITTSFORD INC, APPLE CINEMAS SIMSBURY INC, APPLE CINEMAS TORRINGTON INC, APPLE CINEMAS VII, INC, APPLE CINEMAS WARWICK, INC, APPLE CINEMAS WATERBURY INC, APPLE CINEMAS RIVERVIEW PLAZA INC., APPLE CINEMAS WHITE PLAINS INC.<br><br>      Defendant. | CASE NO.  3:26-MC-80021<br><br>[RELATED TO CASE NO 1:25-CV-12173 PENDING IN THE DISTRICT OF MASSACHUSETTS]<br><br>**APPLE INC.'S NOTICE OF MOTION AND MOTION TO COMPEL SUBPOENA COMPLIANCE OR FOR TRANSFER WITH SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |

|     |     |
| --- | --- |
| 1   | TO ALL PARTIES AND COUNSEL OF RECORD: |

Please take notice that at a date and time to be determined, Petitioner Apple Inc. ("Apple") will and hereby does move the Court pursuant to Fed. R. Civ. P. 45, Fed. R. Civ. P. 37, and Civil L.R. 37-2 for an order:

(1) Compelling 1000 Van Ness LP to comply with Apple's subpoena dated and successfully served on October 17, 2025; or, in the alternative

(2) Transferring this motion to the District of Massachusetts pursuant to Fed. R. Civ. P. 45(f).

This motion is based on the present Notice of Motion, along with the concurrently filed Memorandum of Points and Authorities and supporting declarations and exhibits submitted to the Court and such other matters as may be considered at the hearing.

DATED: January 29, 2026

Respectfully submitted,

By: */s/ Yan-Xin Li*

Yan-Xin Li (SBN 332329)
yanxin.li@kirkland.com
KIRKLAND & ELLIS
555 California Street, 27th Floor
San Francisco, CA 94104
T: (415) 439-1400

Dale M. Cendali (SBN 1969070)
dale.cendali@kirkland.com
Mary Mazzello (*pro hac vice* forthcoming)
mary.mazzello@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
T: (212) 446-4800

Miranda D. Means (*pro hac vice* forthcoming)
KIRKLAND & ELLIS
200 Clarendon Street
Boston, MA 02116
T: (617) 385-7500
miranda.means@kirkland.com

*Attorneys for Apple Inc.*

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  STATEMENT OF RELEVANT FACTS ...................................................................... 2

III. ARGUMENT ................................................................................................................... 7

    A.   Legal Standard ..................................................................................................... 7

    B.   1000 Van Ness Possesses Relevant Information Discoverable Through a Third-Party Subpoena ................................................................................................... 9

    C.   Failure to Comply with Subpoena Warrants Compelled Compliance, and All Objections Have Been Waived as Untimely ..................................................... 12

    D.   Alternatively, This Motion Should Be Transferred to the District of Massachusetts ....... 13

IV.  CONCLUSION ............................................................................................................. 14

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*A. Simon & Sons, Inc. v. Simonfurniture Int'l, Inc.*,
   No. 21-CV-11254-PBS, 2021 WL 6144611 (D. Mass. Nov. 19, 2021) ................................. 10, 11

*In re Allergan, Inc. Proxy Violation Sec. Litig.*,
   No. SACV142004DOCKESX, 2016 WL 11742759 (C.D. Cal. Nov. 28, 2016) .............................. 9

*Apple Inc. v. Sand Media Corp Inc, et al.*,
   Case No. 1:25-CV-12173 (D. Mass. 2025) ............................................................................. 1, 6

*BBK Tobacco & Foods LLP v. Cent. Coast Agriculture, Inc.*,
   No. 21-MC-80189-DMR, 2021 WL 5507167 (N.D. Cal. Nov. 24, 2021) .................................. 7, 8

*Boustany v. Bos. Dental Grp., Inc.*,
   42 F. Supp. 2d 100 (D. Mass. 1999) ........................................................................................ 10

*CrossFit, Inc. v. Mustapha*,
   No. CV 13-11498-FDS, 2015 WL 12724069 (D. Mass. Nov. 16, 2015) ................................. 10, 11

*Deckers Outdoor Corp. v. Last Brand, Inc.*,
   No. 23-CV-04850-AMO (LJC), 2024 WL 3905034 (N.D. Cal. Aug. 21, 2024) .......................... 9

*Doe v. United States*,
   No. 5:24-MC-00003-KK-SPX, 2024 WL 1481443 (C.D. Cal. Mar. 18, 2024) ........................... 13

*Dominguez v. Ford Motor Co.*,
   No. 5:21-CV-00226-JWH-SP, 2021 WL 6496838 (C.D. Cal. Dec. 1, 2021) ............................... 12

*Dorpan, S.L. v. Hotel Meliá*,
   728 F.3d 55 (1st Cir. 2013) ..................................................................................................... 10

*Erickson v. Builder Advisor Grp. LLC*,
   No. 22-MC-80094-TSH, 2022 WL 1265823 (N.D. Cal. Apr. 28, 2022) ..................................... 8

*Fujikura Ltd. v. Finisar Corp.*,
   No. 15-MC-80110-JSC, 2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) ........................................ 8

*Helping Hand Caregivers Ltd. v. Darden Corp.*,
    No. MC1600011BRORAO, 2016 WL 10987313 (C.D. Cal. Feb. 17, 2016) .................................. 14

*Ji v. Bose Corp.*,
    538 F. Supp. 2d 349 (D. Mass. 2008) ........................................................................................ 9

*Mariano v. Villa*,
    No. 5:16-CV-03467-EJD, 2020 WL 3615554 (N.D. Cal. July 2, 2020) ........................................ 8

*McCoy v. Sw. Airlines Co.*,
    211 F.R.D. 381 (C.D. Cal. 2002) .............................................................................................. 13

*Peoples Fed. Sav. Bank v. People's United Bank*,
    672 F.3d 1 (1st Cir. 2012) .......................................................................................................... 9

*Poturich v. Allstate Ins. Co.*,
    No. 5:15-CV-00081, 2015 WL 12766048 (C.D. Cal. Aug. 11, 2015) ........................................ 13

*In re Subpoena to VaughnPerling*,
    No. 19-MC-00083-CAS(Ex), 2019 WL 8012372 (C.D. Cal. Dec. 2, 2019) .................................. 8

*UBS Sec. LLC v. Third Eye Cap. Corp.*,
    No. CV143997FMOMANX, 2014 WL 12613381 (C.D. Cal. Oct. 21, 2014) .......................... 13, 14

**Rules**

Fed. R. Civ. P. 26 ........................................................................................................... 8, 10, 12

Fed. R. Civ. P. 45 ................................................................................................................... *passim*

Apple Inc. ("Apple") respectfully moves this Court to enforce a subpoena duces tecum (the "Subpoena") to 1000 Van Ness LP ("1000 Van Ness"), the landlord of a movie theater location (the "Apple Cinemas Van Ness Location"), in the underlying litigation against Defendant Sand Media Corp Inc and its affiliates (collectively "Defendants" or "Sand Media"), *Apple Inc. v. Sand Media Corp Inc, et al.*, Case No. 1:25-CV-12173 (D. Mass. 2025) (the "Underlying Action") pending before Chief Judge Denise J. Casper in the District of Massachusetts.

I.   **INTRODUCTION**

Simply ***ignoring*** a valid subpoena seeking highly relevant documents is not an acceptable response under Federal Rule of Civil Procedure 45.  Yet that is precisely what 1000 Van Ness did here.

1000 Van Ness is the landlord that owns and leases a property where Defendants are operating a movie theater called Apple Cinemas.  This theater is of critical importance to the Underlying Action. Apple asserts that Defendants engaged in widescale trademark infringement by using Apple's world-famous APPLE trademarks in connection with APPLE CINEMAS branded movie theaters.  Until recently, Defendants had not operated Apple Cinemas outside of a few suburbs and city outskirts in New England. But Defendants have since changed tactics, rapidly expanding their movie theaters under the infringing trademarks on a national scale and publicizing the expansion through the press and social media.  A cornerstone of Defendants' recent expansion is the Apple Cinemas Van Ness Location, located less than fifty miles from Apple's flagship headquarters in Cupertino, California.  The opening of the Apple Cinemas Van Ness Location was accompanied by a media blitz.  Many San Francisco publications covered the opening, and San Francisco Mayor Daniel Lurie even announced the theater's arrival in San Francisco on social media.  All this media attention also highlighted how using the name "Apple," particularly in connection with a San Francisco location, would inevitably cause consumer confusion.  Multiple San Franscisco publications wrote stories describing the opening even felt the need to explain that Apple Cinemas is not affiliated with Apple.

Central questions in the Underlying Action include the likelihood that consumers will be confused about the source, sponsorship, or affiliation of Apple Cinemas, and whether Apple Cinemas was able to leverage the Apple name in lease negotiations with landlords, like 1000 Van Ness. Accordingly, on October 17, 2025, Apple served 1000 Van Ness with a subpoena containing narrowly

1  tailored document requests aimed at discovering this relevant information, including information related
2  to consumer confusion and the value that the APPLE brand brings to the location.  1000 Van Ness did
3  not respond to the Subpoena at all.  In fact, it has refused to engage in any communications about the
4  Subpoena whatsoever.  1000 Van Ness has not served any objections in response to the Subpoena.  It
5  has not produced a single document.  It has not moved to quash.  And it has not responded to any of
6  Apple's correspondence, ignoring a pre-litigation letter, a preservation letter, two follow-up letters and
7  emails about its failure to comply with the subpoena, and a phone call and voice mail asking for a
8  response.  In short, Apple has spent multiple months attempting to contact 1000 Van Ness in a concerted
9  effort to resolve the issue out of court.  Instead of responding, 1000 Van Ness has done nothing,
10  choosing to disregard the Subpoena rather than follow Federal Rule of Civil Procedure 45, all while
11  continuing to lease space to the infringing Apple Cinemas in San Francisco.  As a result, Apple had no
12  choice but to seek court intervention.  Apple respectfully requests that the Court compel 1000 Van Ness
13  to fully comply with the Subpoena and produce all documents responsive thereto or, in the alternative,
14  transfer this Motion to the District of Massachusetts pursuant to Federal Rule of Civil Procedure 45(f).

## II.  STATEMENT OF RELEVANT FACTS

Apple brought this trademark infringement case against the companies that operate Apple Cinemas in response to an aggressive nationwide expansion of Defendants' movie theaters.  The Apple Cinemas Van Ness Location, a San Francisco theater located less than 50 miles from Apple, was a central part of Defendants' nationwide expansion and attendant media campaign.

Since its founding in 1976 in Los Altos, California, Apple has offered consumers a wide range of innovative goods and services under its famous APPLE house brand, logo (  ), and numerous trademarks containing the word APPLE (collectively, the "APPLE Marks").  Movies have long been part of the Apple brand.  In fact, over the past two decades, Apple has become one of the world's largest distributors of motion pictures and other entertainment content through its award-winning products and services such as Final Cut Pro, iTunes, Apple TV, iMovie, and Apple Vision Pro.  Apple has held numerous events in connection with the Tribeca Film Festival and conducts film screenings at its various Apple Stores.  In recognition of Apple's well-known APPLE Marks, the United States Patent and

Trademark Office has issued Apple dozens of trademark registrations, including a registration for APPLE CINEMA DISPLAY, among a host of other marks.

Defendants own and operate movie theaters under the name APPLE CINEMAS. They also provide a specialized screen and sound experience at certain locations called ACX—APPLE CINEMATIC EXPERIENCE. Based on news reports and historic preservations of the applecinemas.com website, Apple Cinemas started in New England with minimal fanfare, no logo, and a basic website. Indeed, Defendants opened no other theaters from 2016 to 2018, and in 2023 they closed more theaters than they opened. That changed in 2024, when Defendants undertook a rapid, nationwide expansion of Apple Cinemas theaters, transforming themselves from a small regional brand to a nascent national brand. Part of that strategy involves expanding to new locations and shifting focus toward opening theaters in traditional malls (as opposed to strip malls or standalone buildings). This is significant, as mall owners have long coveted having Apple retail stores as anchor tenants. Moreover, unlike the original Apple Cinemas theaters, Defendants' new theaters routinely feature an apple logo, much like the logo Apple uses at its own stores.

A key part of Defendants' expansion strategy was the opening of the Apple Cinemas Van Ness Location. 1000 Van Ness owns the property located at 1000 Van Ness Ave, San Francisco, California 94109. On or about July 10, 2025, Defendants announced plans to open an Apple Cinemas movie theater at the 1000 Van Ness property. James Kilpatrick, "an investor" in 1000 Van Ness, stated that Defendants would be paying "less than a third" of what the previous lessee of the theater paid, indicating that Defendants were able to secure a substantial deal on the property.[1]

On June 25, 2025, Apple sent 1000 Van Ness a letter explaining that "Sand Media's use of the APPLE CINEMAS name and an apple-shaped logo in connection with cinema services" at the Apple Cinemas Van Ness Location "is likely to mislead consumers and diminish the distinctiveness and strength of the Apple Marks." Apple requested "written confirmation" that 1000 Van Ness LP would "not use the APPLE name, an apple-shaped logo, or any marks confusingly similar to or dilutive of the Apple Marks" at the property. 1000 Van Ness did not respond to that letter in any capacity.

---

[1] https://www.sfchronicle.com/entertainment/article/apple-cinemas-san-francisco-movie-theater-20376086.php

Meanwhile, Defendants tapped many prominent media sources and members of the local community to promote the opening of the Apple Cinemas Van Ness Location. This included a post on social media by San Francisco Mayor Daniel Lurie and coverage by ABC7, [2] the *San Francisco Chronicle*,[3] and local news website *SFist*.[4] According to news reports, Defendants opened the San Francisco theater on or about July 10, 2025.

The Apple Cinemas Van Ness Location's opening caused rampant confusion. The comment sections of articles and social media posts promoting the new Apple Cinemas opening are full of questions from the public. For example, one user responded to the announcement of the San Francisco location, "Is this another Apple brand?"

[5]

Exacerbating the problem, consumers have noted numerous quality issues with the Apple Cinemas Van Ness Location. From complaints about rude customer service, to messy bathrooms and theaters, to malfunctioning technology, many customers have felt that Defendants' theater is "sinister" and a "[h]orrible experience from start to finish."[6]

---

[2] https://abc7news.com/post/san-francisco-getting-new-movie-theater-vacated-van-ness-buildingreport/16769960/; https://www.msn.com/en-us/news/technology/san-francisco-getting-new-movie-theater-atvacated-van-ness-building-mayor-lurie-says/ar-AA1GR9b4

[3] https://www.sfchronicle.com/entertainment/article/apple-cinemas-san-francisco-movie-theater-20376086.php

[4] https://sfist.com/2025/07/09/former-amc-van-ness-1000-movie-theater-reopens-this-weekend-as-applecinemas-van-ness/; https://www.sfchronicle.com/entertainment/article/apple-cinemas-san-francisco-opening-20762805.php

[5] https://www.facebook.com/reel/706561949028963

[6] https://share.google/B1ISUhHUMLv9gmfGP; https://share.google/7yBlY4ipmmo8mOodI; https://share.google/v6qVMKRiSp1ZVbeyi




This used to be my favorite theater in the city. Spacious, labyrinthine, fascinating, beautiful building, chill and friendly employees.
Now it sucks! What a tragedy. I got screamed at by an employee the second I walked in and it was all downhill from there. I think there's a new manager and god knows what they're doing to the kids that work there. Go literally anywhere else. Something sinister is going on.[7]



★☆☆☆☆  4 months ago

Horrible experience from start to finish. The sound in the theatre was extremely loud—so loud we couldn't even understand the dialogue. It was physically uncomfortable and gave us a headache within minutes. We politely informed the manager, but instead of addressing the issue, they actually increased the volume. We left just 10 minutes into the movie.
The concessions were equally disappointing—no real food options, just candy, some soft drinks, and popcorn that looked (and tasted) old and stale. Escalators were partly out of service, and the staff seemed disorganized and confused.
A complete waste of time and money. Definitely won't be returning.[8]



★☆☆☆☆  a month ago

I will not return here. It appears to be experimenting with a nearly human-free "automated" experience… as in they try to run it with as few ppl as possible. When the tech breaks, there are few ppl to help. When I was there this week it happened. The IMAX screen broke down. The popcorn machine broke down. The soda machine broke down. And nothing could be done. I had a fandango ticket so they couldn't even refund me. (And I'm still waiting for fandango to refund me, since they can't do it if you request refund after movie start time!) Tricia, the nice human being on premises was trying to juggle 800 things and was very nice and kept her cool, which I appreciate. I sympathized with her situation. It wasn't her fault I was out $30 in round trip uber rides. What a disappointment.

This was my 2nd and last strike here. I came a month earlier and was disappointed they had stale popcorn, messy lobby areas, and lots of signage that they would be upgrading their seats "soon…"

Those seats have not been upgraded as of this week :/[9]

---

[7] Id.

[8] Id.

[9] Id.

It harms Apple's brand and reputation when consumers attribute issues such as these to Apple, particularly as Apple is a technology company, and many of Defendants' complaints pertain to their "nearly human-free 'automated' experience" and broken "tech."[10]

Against this backdrop of expansion and the resulting confusion it has caused, Apple had no choice but to act to enforce its rights. On August 1, 2025, Apple filed suit against Defendants in the District of Massachusetts. *See* Plaintiff Apple Inc.'s Complaint, *Apple Inc. v. Sand Media Corp Inc, et al.*, Case No. 1:25-CV-12173 (D. Mass. 2025), Dkt. No. 1. To obtain relevant discovery, Apple subpoenaed Apple Cinemas' landlords. Apple initially identified 1000 Van Ness as a landlord through a San Francisco Chronicle published an article stating that "Apple Cinemas, a small East Coast-based chain that opened its first theater in 2013, signed a lease with the building's owners, a partnership called 1000 Van Ness LP, in June."[11] Defendants would later identify 1000 Van Ness LP as its landlord in their responses to interrogatories served by Apple, which asked Defendants to identify all of Apple Cinemas' landlords. Apple obtained contact information for 1000 Van Ness from the California Secretary of State's website, 1000 Van Ness' registered agent is "Mia Aceves" at 1 Embarcadero Center, Suite 1200, San Francisco, CA 94111.[12] Apple also found an email address and contact information for John Kilpatrick, a partner in 1000 Van Ness, through articles and business profiles.

On September 8, 2025, Apple sent 1000 Van Ness LP a letter informing it that it "likely has documents relevant to the" lawsuit and demanding that 1000 Van Ness "preserve all documents and communications." Declaration of Miranda D. Means, Dated January 29, 2026 ("Means Decl.") Exhibit 1 (Preservation Letter). 1000 Van Ness, again, did not respond in any capacity.

On October 17, 2025, 1000 Van Ness was validly served with the Subpoena. *See* Means Decl. Exhibit 2 (1000 Van Ness Document Subpoena). Apple's process server served Peter Pokalsky, community manager for the 1000 Van Ness property, at 1 Embarcadero Center, Suite 1200, San Francisco, California 94111. Means Decl. Exhibit 3 (Affidavit of Service). The Subpoena was served at the address

---

[10] *Id.*

[11] https://www.sfchronicle.com/entertainment/article/apple-cinemas-san-francisco-opening-20762805.php

[12] https://bizfileonline.sos.ca.gov/search/business

for 1000 Van Ness's designated agent based on a search of the California Secretary of State website. The Subpoena requested documents highly relevant to this litigation, including documents concerning "whether customers would and/or did confuse or associate" Defendants' movie theaters with Apple's goods and services, as well as documents concerning "whether the name 'Apple Cinemas' would draw consumers" to 1000 Van Ness. *Id.* The Subpoena requested the production of documents on or before November 7, 2025. *Id.* 1000 Van Ness, again, did not respond in any capacity.

On November 14, 2025, Apple sent 1000 Van Ness yet another letter explaining that "1000 Van Ness LP must comply with the aforementioned subpoena" and requested that 1000 Van Ness LP "respond by no later than November 21, 2025 with the requested documents in their entirety." Means Decl. Exhibit 4 (11/14/2025 Correspondence). Apple stated that if 1000 Van Ness "had any questions" Apple was "happy to discuss so as to move these discovery requests forward without involving the Court." *Id.* 1000 Van Ness again did not respond in any capacity.

On December 18, 2025, Apple again reached out to request 1000 Van Ness's compliance with the Subpoena, offering a new deadline of January 2, 2026. Means Decl. Exhibit 5 (12/18/2025 Correspondence). 1000 Van Ness again did not respond in any capacity.

On January 9, 2026, Apple tried to contact 1000 Van Ness yet again. Unable to reach 1000 Van Ness, Apple left a voicemail. 1000 Van Ness again did not respond in any capacity.

Finally, on January 26, 2026, Apple attempted to serve 1000 Van Ness at a different address based on searches of both Westlaw Corporate Records & Business Registrations and Westlaw Company Investigator: 4 Embarcadero Center, Suite 1400, San Francisco, California 94111. However, Apple was still unable to reach 1000 Van Ness.

After receiving no response from 1000 Van Ness, Apple had no choice but to file this Motion. For the reasons explained below, the Court should compel 1000 Van Ness LP to fully comply with the Subpoena, or, in the alternative, transfer this motion to the District of Massachusetts.

### III. ARGUMENT

#### A. Legal Standard

Federal Rule of Civil Procedure 45 governs the discovery of nonparties by subpoena. *See* Fed. R. Civ. P. 45; *see also BBK Tobacco & Foods LLP v. Cent. Coast Agriculture, Inc.*, No. 21-MC-80189-

DMR, 2021 WL 5507167, at *2 (N.D. Cal. Nov. 24, 2021). "If a non-party fails to respond, a party seeking enforcement of a subpoena [may] bring a motion in 'the court for the district where compliance is required for an order compelling production or inspection.'" *Erickson v. Builder Advisor Grp. LLC*, No. 22-MC-80094-TSH, 2022 WL 1265823, at *2 (N.D. Cal. Apr. 28, 2022) (citing Fed. R. Civ. P. 45(d)(2)(B)(i)); *BBK Tobacco*, 2021 WL 5507167, at *3 (allowing a motion to compel "'where the nonparty has not formally objected but has instead failed to respond'") (citing *Fujikura Ltd. v. Finisar Corp.*, No. 15-MC-80110-JSC, 2015 WL 5782351, at *3 (N.D. Cal. Oct. 5, 2015)) (citing *In re Subpoena to VaughnPerling*, No. 19-MC-00083-CAS(Ex), 2019 WL 8012372, at *3 (C.D. Cal. Dec. 2, 2019)).

On a motion to compel discovery, "the moving party must first demonstrate that the information requested is within the scope of permissible discovery." *Erickson*, 2022 WL 1265823, at *2. The burden then shifts to the nonmoving party to show any reason the discovery should not be permitted. *Id.* The scope of discovery under a Rule 45 subpoena is the same as the scope of discovery permitted under Federal Rule 26(b). *Mariano v. Villa*, No. 5:16-CV-03467-EJD, 2020 WL 3615554, at *2 (N.D. Cal. July 2, 2020). Federal Rule 26 provides that a party may discover any matter that is relevant to a claim or defense and that is "proportional to the needs of case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Pursuant to this law and as detailed below, the Court should compel 1000 Van Ness to comply with the Subpoena for two reasons. **First**, the Subpoena seeks information that is within the scope of permissible discovery because it seeks nonprivileged, relevant documents. **Second**, despite Apple's proper methods of service and reminders to 1000 Van Ness of its obligation to respond, 1000 Van Ness has failed to acknowledge the subpoena, waiving all objections thereto. There are no grounds on which discovery should not be permitted. Accordingly, the Court should compel 1000 Van Ness to comply fully with the Subpoena by searching for and producing responsive documents.

**B. 1000 Van Ness Possesses Relevant Information Discoverable Through a Third-Party Subpoena**

The Subpoena seeks documents that are relevant to at least three aspects of the Underlying Action. *First*, it seeks documents concerning Defendants' intent to trade on Apple's brand recognition. Intent is relevant to the likelihood-of-confusion analysis, among other elements of trademark infringement. *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 11 (1st Cir. 2012) ("[A]lthough bad intent is 'not required' for a finding of trademark infringement, the defendant's intent in adopting the mark is an appropriate consideration in the court's assessment of whether the public is likely to be confused about the actual source of the goods or services at issue"); *see also Ji v. Bose Corp.*, 538 F. Supp. 2d 349, 353 (D. Mass. 2008) ("If there is evidence that the defendant intended to profit by creating confusion among consumers with respect to whether the plaintiff had endorsed its products, that is relevant to the determination of the likelihood of confusion as well"); *see also Deckers Outdoor Corp. v. Last Brand, Inc.*, No. 23-CV-04850-AMO (LJC), 2024 WL 3905034, at *3 (N.D. Cal. Aug. 21, 2024) (ordering production of documents in trade dress infringement case, holding that "a defendant's knowledge of an existing product and intent to copy it can be relevant to showing consumers' likelihood of confusion, even though it is not a necessary component of that element of the claim" and explaining that "[s]upposing hypothetically that one of [defendant's] employees sent an email stating 'we should sell a version of [plaintiff's] boots' with a photograph of one of the products at issue—or perhaps even stated their intent to sell something resembling [plaintiff's] boots more generally, before bringing one of the allegedly infringing products to market—such correspondence would likely warrant production"). Documents concerning a defendant's knowledge of a plaintiff's trademark and intent to trade on brand recognition may be properly sought from third parties via a subpoena. *See In re Allergan, Inc. Proxy Violation Sec. Litig.*, No. SACV142004DOCKESX, 2016 WL 11742759, at *2 (C.D. Cal. Nov. 28, 2016) ("When a non-party possesses the potentially relevant information, a party [seeking discovery] may obtain [a subpoena for the evidence] via a Rule 45 subpoena.").

Here, the Subpoena seeks documents that are highly relevant to Defendants' knowledge of Apple's trademark and intent in adopting the Apple Cinemas mark. For example, the Subpoena seeks documents concerning "Defendants' or 1000 Van Ness LP's awareness of Apple, the Apple Marks, the Apple brands,

and Apple's goodwill, value, and reputation." *See* Means Decl. Exhibit 2 (1000 Van Ness Document Subpoena) at Request No. 10; *see also id*. at Request No. 4 (seeking documents concerning "any potential name change" that "departs from, modifies, or changes the name 'Apple Cinemas' or any of the Accused Apple Cinemas Marks, including, but not limited to, [1000 Van Ness's] reaction to or impression of such a change"), Request No. 7 (seeking documents concerning "the value or desirability of having an Apple-operated retail store branded with the Apple Marks as a tenant or lessee"), and Request No. 8 (seeking documents concerning 1000 Van Ness's "interest in obtaining" or "efforts to obtain, if any, a retail store branded with the Apple Marks as a tenant or lessee"). Commercial landlords such as 1000 Van Ness are in unique positions to evaluate prospective tenants based on brand recognition, reputation, and the ability to attract foot traffic. Indeed, other commercial landlords have responded to subpoenas in connection with other Apple Cinemas locations in this case. Evidence reflecting 1000 Van Ness's understanding of the strength of Apple's brand and consumer perceptions of Apple therefore provides context for the environment in which Defendants may have represented their business to 1000 Van Ness. Moreover, 1000 Van Ness is a San Francisco landlord, which would likely be aware of tech companies like Apple and the value the Apple brand can bring to commercial properties. As a result, the Subpoena's requests are within the scope of permissible discovery under Federal Rule 26.

*Second*, the Subpoena seeks documents concerning actual confusion. Evidence bearing on actual confusion is highly relevant to Apple's trademark infringement claims. "Actual confusion 'is often taken to be the most persuasive possible evidence that there is a likelihood of confusion. Actual confusion is such persuasive evidence that even a minimal demonstration of actual confusion may be significant.'" *CrossFit, Inc. v. Mustapha*, No. CV 13-11498-FDS, 2015 WL 12724069, at *8 (D. Mass. Nov. 16, 2015) (citing *Boustany v. Bos. Dental Grp., Inc.*, 42 F. Supp. 2d 100, 108 (D. Mass. 1999)) (finding actual confusion where plaintiff presented evidence of potential customers posting comments online expressing confusion about defendant's affiliation with plaintiff). "'[E]ven a few incidents of actual confusion are highly probative of the likelihood of confusion.'" *A. Simon & Sons, Inc. v. Simonfurniture Int'l, Inc.*, No. 21-CV-11254-PBS, 2021 WL 6144611, at *7 (D. Mass. Nov. 19, 2021) (citing *Dorpan, S.L. v. Hotel Meliá*, 728 F.3d 55, 66 (1st Cir. 2013)) (finding actual confusion where plaintiff received communications intended for defendant). Multiple requests in the Subpoena bear on this issue, including Request No. 2,

which seeks documents concerning "whether customers would and/or did confuse or associate" Defendants' movie theaters with Apple's goods and services, as well as Request No. 3, which seeks documents concerning "whether the name 'Apple Cinemas' would draw consumers" to 1000 Van Ness. *See* Means Decl. Exhibit 2 (1000 Van Ness Document Subpoena); *see also id*. at Request No. 12 (seeking documents concerning "the public's or consumers' impression of Defendants or Defendants' Theaters, including, but not limited to, negative complaints or reviews"), Request No. 14 (seeking a "representative sample of all promotional materials, advertising, and marketing displaying the Accused Apple Cinemas Marks in connection with any of Defendants' Goods and Services"), and Request No. 16 (seeking a "representative sample of all promotional materials, advertising, and marketing displaying the Accused Apple Cinemas Marks in connection with any of the Apple Marks").

***Third***, the Subpoena seeks documents that are relevant to the value of the APPLE trademark to landlords.  As the commercial landlord of the space, 1000 Van Ness was directly involved in negotiating the lease under which Defendants operate Apple Cinemas.  Notably, one of 1000 Van Ness' investors is on record stating that Defendants would pay "less than a third" of what the previous lessee for that same space paid.[13]  Information concerning the negotiations of the lease price (including communications, drafts, and internal analyses) is relevant to why 1000 Van Ness, as the landlord, agreed to such a substantial reduction and what representations Defendants may have made in order to secure the lease at that price.  This would include evidence about what Defendants represented in terms of the value of their APPLE-formative trademark, which could bear on Defendants' intent. *See CrossFit,* 2015 WL 12724069, at *8; *see also A. Simon & Sons,* 2021 WL 6144611, at *7.  Numerous requests in the Subpoena bear on this issue, including Request No. 9, which seeks documents concerning "Defendants' tenancy or lease of [1000 Van Ness's] Property, including, but not limited to, 1000 Van Ness LP's contract(s) with Defendants and the selection of the terms thereof." *See* Means Decl. Exhibit 2 (1000 Van Ness Document Subpoena); *see also* Request No. 6 (seeking documents concerning 1000 Van Ness's "analysis, if any, of having one of Defendants' Theaters at Your Property, including, but not limited to, Your evaluations (if any) of the value thereof and Market Research") and Request No. 11 (seeking documents concerning "the

---

[13] https://www.sfchronicle.com/entertainment/article/apple-cinemas-san-francisco-movie-theater-20376086.php

Accused Apple Cinemas Marks, Defendants' Theaters, and Defendants' Goods and Services, including, but not limited to, marketing strategies, advertising strategies, Market Research, and plans for expansion of locations or services").

Accordingly, the Subpoena seeks evidence that is properly within the scope of permissible discovery from third parties under Fed. Rule Civ. P. 26(b)(1). Ultimately, 1000 Van Ness's failure to respond to the subpoena has deprived Apple of discovery that is relevant to the key issues in this case, and Apple respectfully submits that the Court should compel compliance.

### C. Failure to Comply with Subpoena Warrants Compelled Compliance, and All Objections Have Been Waived as Untimely

"The court may compel compliance with a subpoena 'where the nonparty has not formally objected but has instead failed to respond.'" *Dominguez v. Ford Motor Co.*, No. 5:21-CV-00226-JWH-SP, 2021 WL 6496838, at *2 (C.D. Cal. Dec. 1, 2021). Here, Apple properly served the subpoena on 1000 Van Ness on October 17, 2025. *See* Means Decl. Exhibits 2 and 3 (1000 Van Ness Document Subpoena and Affidavit of Service). The Subpoena requested the production of documents on or before November 7, 2025. 1000 Van Ness did not respond to this Subpoena in any capacity. On November 14, 2025 (notably, seven days past 1000 Van Ness's initial deadline to respond), Apple reached out again to request 1000 Van Ness's compliance with the Subpoena, offering a new deadline of November 21, 2025 (fourteen days beyond the initial deadline). Means Decl. Exhibit 4 (11/14/2025 Correspondence). Again, 1000 Van Ness did not respond. On December 18, 2025, Apple again reached out to request 1000 Van Ness's compliance with the Subpoena, offering a new deadline of January 2, 2026 (fifty-six days beyond the initial deadline). Means Decl. Exhibit 5 (12/18/2025 Correspondence). Finally, on January 9, 2026, Apple again tried to contact 1000 Van Ness via voicemail, to which 1000 Van Ness again did not respond in any capacity. Accordingly, 1000 Van Ness's failure to respond entirely to the subpoena despite Apple's reminders warrants court-compelled compliance. *See Dominguez*, 2021 WL 6496838, at *2 (granting plaintiff's motion to compel third party's compliance with subpoena where third party failed to timely produce the requested records and ignored plaintiff's attempts to meet and confer).

Moreover, failure to timely serve objections results in waiver of all grounds for objection to a subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B) ("The objection must be served before the earlier of the time

specified for compliance or 14 days after the subpoena is served."); *see also McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002) ("Failure to serve timely objections waives all grounds for objection"); *see also Poturich v. Allstate Ins. Co.*, No. 5:15-CV-00081, 2015 WL 12766048, at *2 (C.D. Cal. Aug. 11, 2015) (holding that non-party witness "ha[d] failed to object within the time required and hence, ha[d] waived any objections."); *Doe v. United States*, No. 5:24-MC-00003-KK-SPX, 2024 WL 1481443, at *2 (C.D. Cal. Mar. 18, 2024), *report and recommendation adopted*, No. 5:24-MC-00003-KK-SPX, 2024 WL 5104095, at *2 (C.D. Cal. Apr. 10, 2024) (granting defendant's motion to compel non-party's compliance with subpoena where non-party had failed to obey the subpoena and the court had "no opposing papers to consider" from the non-party). 1000 Van Ness did not serve any objections in response to the Subpoena, and thus waived all objections. Accordingly, the Court should order 1000 Van Ness to fully comply with the Subpoena and produce all non-privileged, responsive documents.

### D. Alternatively, This Motion Should Be Transferred to the District of Massachusetts

Alternatively, the Court should transfer this Motion to the Underlying Action in the District of Massachusetts, which issued the Subpoena, for Judge Casper's consideration and decision. Rule 45 permits a court to transfer a motion to compel a Rule 45 subpoena if the subpoenaed party consents or even over 1000 Van Ness's objection if there are "exceptional circumstances." Fed. R. Civ. P. 45(f). As 1000 Van Ness has not responded to any of Apple's correspondence, it is unclear whether it consents or objects to such a transfer. But regardless, a transfer is warranted here for two reasons.

*First*, transfer is warranted because Apple has sought subpoena responses from several third-party landlords with relevant information, and transferring this motion would reduce the risk of inconsistent results in the Underlying Action. *See UBS Sec. LLC v. Third Eye Cap. Corp.*, No. CV143997FMOMANX, 2014 WL 12613381, at *3 (C.D. Cal. Oct. 21, 2014) (granting plaintiff's motion to transfer motion to compel third party's subpoena compliance, finding exceptional circumstances met where plaintiff had "sought additional discovery from other 'third parties with relevant information'" and thus, there was a substantial likelihood that the same or similar discovery issues would arise, holding that transfer "would avoid disruption of the [underlying] action and would decrease the risk of inconsistent results").

*Second*, the District of Massachusetts is already presiding over the merits of the issues in this litigation, including but not limited to Defendants' knowledge of Apple's brand, Defendants' intent in

adopting the Accused Marks, and the likelihood of consumer confusion, and is therefore best positioned to assess the relevance, proportionality, and proper scope of the requested discovery. *See also Helping Hand Caregivers Ltd. v. Darden Corp.*, No. MC1600011BRORAO, 2016 WL 10987313, at *2-3 (C.D. Cal. Feb. 17, 2016) (granting plaintiff's motion to transfer motion to compel compliance with subpoena where subpoenaed party had "not filed an Opposition or otherwise responded to Plaintiff's motions," holding that exceptional circumstances existed based on judicial economy and efficiency and that the motion would be "better decided by the court with control over the disposition of the underlying case," especially where the transferee court was "familiar with some the topics listed in the subpoenas").

Moreover, the burden on 1000 Van Ness as the subpoenaed third party does not weigh against transfer. Here, 1000 Van Ness has neither responded to the Subpoena nor objected to compliance in this District, and thus has failed to assert any local burden or hardship that would be alleviated by keeping the dispute here. Under these circumstances, "'such interests outweigh the interest of the nonparty served with the subpoena in obtaining local resolution of the motion.'" *See UBS*, 2014 WL 12613381, at *3 (finding exceptional circumstances met and that transferee court was in a "better position to rule on the motion to compel" where transferee court was familiar with the full scope of the issues and any implications the resolution of the motion would have on the underlying litigation).

Accordingly, while Apple respectfully submits that this Court has ample authority to compel compliance directly, Apple alternatively requests that the Court transfer this motion to compel to the District of Massachusetts for resolution pursuant to Rule 45(f).

## IV. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court grant Apple's Motion to Compel and enter an order requiring 1000 Van Ness to fully comply with Apple's third-party Subpoena.

| | |
|---|---|
| DATED: January 29, 2026 | Respectfully submitted,<br><br>By: */s/ Yan-Xin Li*<br>Yan-Xin Li (SBN 332329)<br>yanxin.li@kirkland.com<br>KIRKLAND & ELLIS<br>555 California Street, 27th Floor<br>San Francisco, CA 94104<br>T: (415) 439-1400<br><br>Dale M. Cendali (SBN 1969070)<br>dale.cendali@kirkland.com<br>Mary Mazzello (*pro hac vice* forthcoming)<br>mary.mazzello@kirkland.com<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>T: (212) 446-4800<br><br>Miranda D. Means (*pro hac vice* forthcoming)<br>KIRKLAND & ELLIS<br>200 Clarendon Street<br>Boston, MA 02116<br>T: (617) 385-7500<br>miranda.means@kirkland.com<br><br>*Attorneys for Apple Inc.* |